## HARVEY v. GULF, C. & S. F. RY. CO. *
(No. 6728.)

(Court of Civil Appeals of Texas. Austin. March 26, 1924. Rehearing Denied. April 30, 1924.)

1. **New trial ⬅143(4)—Jury's mistake in answering special issue may not be shown unless unanimous.**

Mistake in writing the answer to a special issue in an action for injuries, which thereby charged the plaintiff with contributory negligence defeating her recovery, could not be shown, where the answer as written was not the unanimous mistake of the jury.

2. **New trial ⬅143(4)—Unanimous mistake of jury in answering special issue may be shown despite statute.**

A unanimous mistake of jurors in the nature of a clerical error in announcing a verdict already arrived at may be shown and relieved, irrespective of Rev. St. 1911, art. 2021, relating to the granting of new trials because of alleged misconduct of juries.

3. **Trial ⬅315—Jury's misconduct in awarding damages and then framing answers to support verdict held to require reversal.**

Where the jury awarded damages in action for injuries, and thereafter answered all the questions so that plaintiff "would get the money," their misconduct was such as to require a reversal.

---

**4. New trial ⟨⟩140(3)—Evidence held not to show that juror fraudulently wrote answer to special question.**

Where after the jury in action for injuries agreed to award plaintiff damages, framed their answers so as to support their verdict, evidence *held* not to show that the juror writing the answers purposely or fraudulently wrote the answer to the question relating to the contributory negligence of plaintiff contrary to the way he had been instructed.

**5. New trial ⟨⟩44(2)—Statement of juror as to effect of answer held "misconduct" sufficient to authorize new trial.**

Where the jury, in an action for injuries, agreed to award plaintiff damages and to then frame their answers so as to support their verdict, the statement of a juror, who purported to know, that it was immaterial how the question on contributory negligence was answered which influenced some of the jurors to answer the question in the affirmative, contrary to what they thought the evidence dictated, was "misconduct" sufficient, under Rev. St. 1911, art. 2021, to authorize a new trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misconduct.]

**6. New trial ⟨⟩44(1)—Rule as to what constitutes "misconduct" by jury as contemplated by statute stated.**

A mere mistake of fact by jury, or that they did not know the legal effect of their answers to special issues submitted, or that they answered a question in a way they did not intend to find, because they thought they must do so in order to answer another question in the affirmative, or a mistake of fact on their part going to the merits or a misunderstanding of an unambiguous charge, does not constitute "misconduct" as contemplated by Rev. St. 1911, art. 2021.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by Beatrice Harvey, by her next friend and another, against the Gulf, Colorado and Sante Fé Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

A. L. Curtis and Winbourn Pearce, both of Temple, for appellant.

Terry, Cavin & Mills, of Galveston, W. W. Hair, of Temple, and Lee, Lomax & Wren, of Fort Worth, for appellee.

### Statement.

BLAIR, J. Appellant's statement of the nature and result of the suit is substantially correct, and we adopt the following portion of it as our own statement herein:

"Miss Beatrice Harvey, by next friend, brought this action against the Gulf, Colorado & Santa· Fé Railway Company for damages resulting from an injury sustained by her while a passenger on one of defendant's passenger trains, riding as such from Brownwood, Tex., to Temple, Tex., alleging that by reason of the carelessness and negligence of defendant, while in the exercise of due care and caution herself, she was jarred, jerked, and jolted, and was caused to violently fall to the floor of said passenger coach and receive serious and permanent injuries.

"The defendant answered by specially denying all of plaintiff's allegations, and by pleading that the plaintiff, prior to boarding said train, had for a long time suffered from some character of disease or ailment, and that she was deformed in her spine and back, by reason of which, in attempting to stand in or walk down the aisle of said train unaccompanied she failed to exercise care for her own safety and was guilty of contributory negligence, and that in making said attempt while the train was in motion she assumed the risk which was one usually and ordinarily incident to railway travel. The court submitted the case to the jury on special issues, and, after having defined the necessary legal terms, propounded the following questions to the jury, to which questions appear the answers returned into the court:

"(1) 'Do you find from the evidence that the car on which the plaintiff was riding immediately before she sustained her injuries, if any, was suddenly and violently jerked or jolted, thereby causing the plaintiff to receive the injuries alleged in plaintiff's petition?' Answer: 'Yes.'

"(2) 'Do you find from the evidence that in the jerking or jolting of said car, if it did, the defendant through its employees was guilty of negligence, under the definition and instructions herein given you?' Answer: 'Yes.'

"(3) 'Do you find from the evidence that said jerking or jolting of said car, if it did, was the proximate cause of plaintiff's injuries?' Answer: 'Yes.'

"(4) 'In going back to the end of the car and in standing in said car while the same was in motion, do you find from the evidence that the plaintiff was guilty of contributory negligence as that term has been hereinbefore defined?' Answer: 'Yes.'

"(5) 'Were the injuries, if any, sustained by the plaintiff, the proximate result of a mere accident?' Answer: 'No.'

"(6) 'What amount, if any, do you find from the evidence plaintiff has been damaged by reason of the injuries, if any, sustained? You will insert in the space below the amount which you find and determine from the evidence.' Answer: '$2,500.' "

Upon motion of appellee, railway company, the court rendered judgment for it, based upon the jury's verdict finding appellant guilty of contributory negligence.

Appellant filed and presented a motion for a new trial, based principally upon alleged misconduct of the jury during their deliberations while arriving at a verdict. Their testimony relative to the said alleged misconduct was heard by the trial judge, who after hearing same overruled appellant's motion for a new trial, hence this appeal.

### Findings of Fact.

The facts as shown from the testimony of the jurors adduced upon the hearing of the

(261 S.W.)

motion for a new trial on the issue of the misconduct of the jury are as follows: The jury retired some time during Friday to deliberate on the case. From the beginning Juror Henderson was of the opinion that the railway company was guilty of no negligence, and voted to answer question No. 1 in the negative. He was later induced to vote with the other jurors for an affirmative answer to this question. On question No. 2 he voted "No," and some of the other jurors joined him in this vote, but a majority of the jurors voted "Yes" to this question. Later they all voted to answer this question "Yes," upon the proposition of Juror Henderson that they would allow $2,500 damages, and answer the question so appellant might get the money, although one juror stated on this hearing that he thought that it was to have been answered "No." No trouble was experienced in arriving at the answer "Yes" to question No. 3. The first vote on question No. 4 was taken about midnight on Friday night, and the jury stood three to answer "Yes" and eight to answer "No" to this question, which related to appellant's act of contributory negligence as pleaded by appellee. One of the jurors soon came over to the majority view to answer this question "No," but Jurors Henderson and Taylor maintained that it should be answered "Yes." No agreement was reached Friday night on this question. On the following morning Juror Henderson induced the other jurors to go with him before the court, in order that he might propound the following question prepared by him to the court:

"Taking into consideration, paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, in your charge, together with the special issues 1, 2, 3, 4, 5, 6, can this jury answer the first question 'Yes' and the second question 'No' and find any damages for the plaintiff?"

The court answered the inquiry as follows:

"The matters inquired about by you are as definitely and as clearly covered by the court's charge as it is permissible for the court to instruct you, and you should answer said issues according to the court's instructions, without reference to the legal effect of what your answers may be."

After receiving this instruction from the court the jury again retired and resumed their deliberations, and apparently for the time being passed question No. 4, and took up question No. 6, relating to damages. On this issue the jurors were not agreed. Some were for a large amount of damages and some were for a small amount of damages, and Juror Henderson was for no damages. No agreement could be reached until some time during the afternoon of Saturday when the jurors agreed upon a proposition by Juror Henderson that if all the jury would agree upon $2,500 damages they would answer the questions in such a manner as to allow appellant a recovery of that sum. This proposition seems to have been unanimously accepted by all the jurors, and they then proceeded to read the questions from the beginning and insert the answers in accordance with this agreement to each question as reached. It seems that during this portion of their deliberations some dispute arose as to whether it was material whether question No. 4 was answered in the negative or the affirmative, at which time at least nine of the jurors testified that it was either represented by Juror Henderson or some other juror that it would make no difference how question No. 4 was answered, that plaintiff would get the money anyway under their other answers finding appellee guilty of negligence, and allowing damages. Juror Henderson denies that he made such representation, but admitted that he made the proposition to give $2,500 damages, and answered the questions so as to allow appellant to recover the damages so assessed. Seven of the jurors testified that they voted "No" to question No. 4 at all times, and thought it had been so answered until after they were discharged and in the office of the clerk of the court. Two of the jurors testified that they agreed to answer question No. 4 "Yes" only upon the representation of Juror Henderson that it could not affect their verdict to allow damages, in view of their answers to the other questions. Jurors Henderson and Taylor testified that all the jury agreed to vote "Yes" to this question on Friday night, and Taylor testified that he wrote the answer as they voted Friday night and not of Saturday, and that he did not recall the question being again discussed on Saturday. Other facts will be stated in the opinion.

### Opinion.

[1, 2] Two grounds of misconduct on the part of the jury were set up by appellant in her motion for a new trial; one of them being as follows:

"The findings of the jury and the answers of the jury were the result of misconduct on the part of the jury, in that, after retiring to consider their verdict, and after having taken the ballot and after having answered question No. 4 in the negative, and after having, through considerable discussion, reached an agreement on the amount, it having been agreed that the questions should be answered in accordance with this finding and in accordance with the way the answers had already been agreed upon, and one of the jurors, having been requested to fill in the answers in pursuance to the agreement of the jury, wrote the answer 'Yes' either by inadvertence, or purposely, when a large number of the jurors and perhaps the majority of same still understood that the said question No. 4 was being answered in the negative, and the plaintiff here represents that but for such misunderstanding said question never would have been answered in the affirmative, and here now represents that at no time did the jury vote to answer said

question No. 4 in the affirmative. Also when the amount was agreed upon it was the further agreement questions then to be answered favorably to plaintiff."

Appellant incorporated this ground of alleged misconduct in a bill of exception and predicated thereon the following proposition seeking a reversal of this case:

"(1) A juror's verdict in returning same under special issue, is the answer which he actually gives to the questions · propounded by the court. Where a juror answers, and his answer by misconduct or mistake is written otherwise than correctly, there could be no verdict, because the very mention of the verdict of the jury carries with it the idea of the findings of the jury."

That portion of this proposition relating to a mistake on the part of the juror writing the answer to question No. 4 is not sustained. Seven jurors testified that they answered the question "No," and thought it was so written until after their discharge. Two testified that they answered "Yes," on the representation of one juror that it was immaterial how the question was answered, in view of the jury's answers to the other questions. Two jurors testified that they answered "Yes," and that was the verdict of the entire jury. One juror was excused because of illness. A unanimous mistake of jurors in the nature of a clerical error in announcing a verdict already arrived at may be shown and relieved, notwithstanding no such procedure is authorized by article 2021, R. S. 1911, relating to granting new trials because of alleged misconduct of juries. The Supreme Court, speaking through Section B of the Commission of Appeals, in an opinion written by Presiding Judge McClendon, in the case of Caylat v. Railway Co., 252 S. W. 480, employed the following language in discussing this question:

"The great weight of authority, both in this country and in England, is to the effect that a unanimous mistake of the jury, in the nature of a clerical error, in writing or reporting their verdict, already arrived at—as contradistinguished from an act constituting misconduct or fraud on the part of the jury, or a mistake of fact or law arising in their deliberations, as for example their misinterpretation of the evidence or the charge of the court, or of the legal effect of their verdict—is not misconduct of the jury, does not come within the · rule above announced, and may be shown by the affidavits of the jurors themselves; and, where the evidence is conclusive that such mistake was made, relief may be granted."

This· decision conclusively decides the mistake question against appellant's contention, for in this case it is undisputed that the ᵛverdict as written was not a unanimous mistake of the jury.

We sustain that portion of appellant's first assignment of error upon which the proposition No. 1 was based, reading:

"Also when the amount was agreed upon it was the further agreement questions then to be answered favorably to plaintiff."

[3] It is undisputed that the jury agreed to allow damages in the sum of $2,500 and then to answer all the questions so that appellant "would get the money." It is also undisputed that after this agreement on the part of the jury they did answer at least some of the questions submitted in accordance with the agreement.

This court held, in the case of Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941, that:

"For a jury to first determine that they will give a plaintiff a verdict, and to determine the amount before they have answered the special issues, and to then frame their answers so as to conform to such finding, is such misconduct as requires a reversal of the case. The jury should answer special issues as they find the facts to be from the evidence, without regard to its effect upon the judgment to be rendered in the cause. The principal object in submitting a question ·to a jury upon special issues is that they should be relieved from any bias or prejudice in favor of or against the parties by reason of the effect of their answers, and that they should answer each question truly as they find the fact to be from the evidence in reference thereto. Clearly this was not done in the instant case."

The principle governing the rule announced in the above cause, that the object in submitting a question to a jury upon special issues is that they should be relieved from any bias or prejudice in favor of or against the parties by reason of the effect of their answer, and that they should answer each question truly as they found the facts to be from the evidence, was violated in this case. Juror Henderson's testimony on this question is as follows:

"The second question as to whether or not the defendant was guilty of negligence in jerking or jolting the train, it was unanimously agreed to answer the question 'No' on Friday night. We changed our answer to that question from 'No' to 'Yes' while we were making out our answers when we got ready to render our verdict. The second question was agreed to be answered 'No' without a dissenting voice up till we started to write in the answers to the questions, and then we decided to change the answer from 'No' to 'Yes.' We changed our answer to that question because I told the jurors that I would agree to give the plaintiff $2,500, and possibly I could conscientiously answer that question ·'Yes,' that I would give the plaintiff the benefit of the doubt as to whether that train was jerked or jolted or not, and then I came over 'and agreed to give the plaintiff $2,500. We voted to give the girl $2,500, and we would have to change to question No. 2 the answer to that question in order that she might get the money. That was after we had been down here and asked the judge for instructions, and the judge had instructed us not to take into consideration the effect of any of our answers. I went back up to the jury room and I told the jury that I

would agree to give the girl $2,500, and that in order for her to get the money they would have to change their answer to question No. 2. They agreed to change their answer. * * * My proposition, in effect, to the jury, was that I would come up from nothing to $2,500, or whatever amount they were for, and in order to give the girl the money we would all have to answer question No. 2 'Yes,' and that we would so answer the question that the girl would get the money, and the jurors accepted that proposition, and that was the way the verdict was reached on that question."

[4] We think this testimony shows such misconduct as to require a reversal of this case. We do not think the testimony sufficient to show that the juror writing the answers of the jury purposely or fraudulently wrote the answer to question No. 4 contrary to the way he had been instructed to write same. The evidence rather indicates a mistake on his part.

The other ground of misconduct on the part of the jury, set up in appellant's motion for a new trial, is as follows:

"The findings of the jury were the result of the misconduct on the part of the jury in this, after the retirement of the jury to consider of their verdict, the jury received other evidence and communication, and considered other evidence, and communication than that which had been introduced before them from the witness stand, in that one of the jurors, to wit, R. L. Henderson, informed the jury and stated to the jury after the jury had agreed to answer special issue No. 4 in the negative, and after a majority of them at all times voted to answer special issue No. 4 in the negative, that it would not make any difference in the effect of the verdict to answer the question in the affirmative, and but for this statement on the part of the said Juror Henderson and others, the jurors who heard the same never would have consented to have answered said question in the affirmative because they had at all times considered and believed from the evidence that the same should be answered in the negative."

[5] Appellant incorporated this ground of misconduct in a bill of exception, and predicated thereon the following proposition of law:

"For a juror to make an improper communication or an improper statement which improperly influences the verdict or answer of any other juror is such misconduct as will demand a new trial."

This proposition is based upon article 2021, Revised Statutes 1911, which is as follows:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by the jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted."

We think that under the evidence adduced, and by virtue of the provision of article 2021, R. S. 1911, that this proposition must also be sustained. On this proposition the appellee, railway company, insists that the trial judge heard the evidence and was authorized to believe the testimony of Jurors Henderson and Taylor, being the only jurors who maintained that question No. 4 was regular and as the jury agreed; and that, in absence of an abuse of the discretion placed in him by article 2021, R. S., relating to such matters, his judgment thereon must stand.

The rule laid down by the Supreme Court by which to test whether or not the trial judge has abused his discretion in cases involving misconduct of jurors is as follows:

"The court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict. The Supreme Court will not look to one portion of the evidence alone, or to another part alone. But it will and should consider the record as a whole upon the point in controversy. * * *

"Our appellate courts, for years and years, have been urging trial courts to warn the juries against every kind of improper conduct. Not only so, but to grant new trials promptly when situations of this kind arise. There will be a great saving of time and expense to litigants if the trial courts themselves will adopt the practice of setting verdicts aside promptly when misconduct appears, and its effect upon the jury is reasonably doubtful." Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Ry Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Hines v. Parry (Tex. Com. App.) 238 S. W. 886; Payne v. Harris (Tex. Com. App.) 241 S. W. 1008.

It is therefore clear under these decisions that if the representations by Juror Henderson that it was immaterial what answer should be given to an issue submitted otherwise than upon the testimony were improper, and under all the evidence leaves it reasonably doubtful as to whether or not the improper statement or representation affected the answer of the jury to any of the questions, then a new trial must be granted. There is no doubt but that the representations so made did affect the verdict of Jurors Edwards and Sutton, for they each state that they agreed to answer "Yes" to question No. 4, solely upon these representations, believing that under the evidence they should have answered it "No," which way they had at all times theretofore voted. Were the statements and representations made by Juror Henderson that, in view of all the jury's answers allowing damages and finding appellee guilty of negligence, it was immaterial how the question on contributory negligence should be answered, improper con-

duct of the jury affecting their verdict? It is well established upon authority in this state that it is improper for a court submitting a case on a special issue charge to inform the jury the effect of their answer to any question or issue submitted. It is also well established that if an attorney in argument of a case informs the jury the effect of their answer to any special issue submitted, such will require a reversal of the case. It is clear that one of the cardinal purposes of the law authorizing the submission of cases on special issues was to avoid just what was practiced by the jury here. Can it be material whether the court or attorney informs the jury as to the effect of their answer to a question on the judgment to be rendered, or whether a juror purporting to know informs the jury thereon, if the jury actually acts upon such representations and statements, as is shown in this case to have been done. It is true that the court warned the jury against taking into consideration the effect of their answers upon any judgment they might think would be rendered thereon, but they flagrantly disobeyed the court's instructions and did discuss the effect of their answers and acted upon the improper information of a juror who purported to know, and who is shown by the testimony to be a leader on the jury, and voted contrary to the way they thought the evidence dictated, by reason thereof. Is it right under such circumstances that a litigant submitting a case to a jury whom the court by instruction could not control, be made to suffer the consequences of the jury's misconduct in considering and acting on matters not in evidence, or the court's charge on the law in arriving at their verdict? We do not think so.

The trial judge in disposing of the motion made no specific findings of fact upon which he based the order, but disposed of the motion upon the following ground:

"Believing the effect of the motion and the testimony is but to impeach the verdict of the jury, and was, not such misconduct as is contemplated by the statute, it becomes my duty to overrule the motion."

[6] Appellee, railway company, also insists in this connection, that if the trial court was not authorized to believe Jurors Taylor and Henderson, being the only jurors whose testimony supports the jury's findings as being in all respects regular and proper, it was a mere attempt to impeach the verdict and not misconduct as contemplated by article 2021, R. S. 1911. Appellee cites the following authorities in support of this contention: Campbell v. Skidmore, 1 Tex. 477; Kilgore v. Jordan, 17 Tex. 346; Little v. Birdwell, '21 Tex. 597, 73 Am. Dec. 242; Thomas v. Zushlag, 25 Tex. Sup. 225; Johnson v. State, '27 Tex. 758; Wills Point Bank v. Bates, 72 Tex. 137, 10 S. W. 348; Wood v. G. C. &

S. F. Ry. Co., 15 Tex. Civ. App. 322, 40 S. W. 24.

We do not agree that the principles announced in those cases are applicable here. In fact we agree with the decisions that a mere mistake of fact by a jury cannot be relieved against, or the fact that the jury did not know the legal effect of their answers to special issues submitted, or that they answered a question in a way that they did not intend to find, because they thought they must do so in order to answer another question in the affirmative, or that there was a mistake of fact on the part of the jury going to the merits of the case, or that they misunderstood an unambiguous charge, will not constitute misconduct on the part of the jury as contemplated by article 2021, R. S., supra. But no such plea is made in this case. The gravamen of the offense here is that jurors were induced to vote on a question submitted them contrary to the way they thought it should be answered under the evidence, upon the unauthorized and improper statement and representation of a juror that it was immaterial as affecting their verdict, since they had found appellee guilty of negligence, and had awarded damages.

Appellant's other propositions have been considered, but are not sustained.

The cause will be reversed and remanded, in accordance with this opinion.