## McGEE v. CUNNINGHAM. (No. 558.)

Court of Civil Appeals of Texas. Eastland.
March 22, 1929.

Rehearing Granted May 17, 1929.

Ghent Sanderford, of Eastland, for appellant.

Grisham Bros., of Eastland, for appellee.

HICKMAN, C. J. Upon the application of appellant, plaintiff below, the district court of Brown county appointed J. D. Allen, a resident of Eastland county, as receiver of a drilling outfit, alleged by appellant to be the partnership property of himself and appellee. The receiver duly qualified by taking the oath and furnishing the bond required by law, and immediately took possession of the property. In response to a joint motion by appellant and appellee, an order was entered, transferring the cause to the district court of Eastland county, where it was tried on its merits

on amended pleadings. The nature of the cause of action asserted by appellant against appellee in his amended petition may be briefly stated as follows:

The petition alleges that the parties were joint owners of one Fort Worth spudder, model D, one Case tractor, and drilling tools and equipment used in connection therewith, each owning a one-half interest in said property, which was in the hands of J. D. Allen, receiver. It is alleged that the spudder and tractor were purchased by the parties for the sum of $3,845, $1,500 of which was paid in cash and the balance evidenced by eight equal promissory notes. The cash payment of $1,500 was in fact paid by one James B. Douglass. The parties had a contract with Douglass to drill and complete a well on a lease owned by him upon terms not necessary to state in detail, but for which contract they were to be paid the approximate sum of $6,000. $1,500 of this amount was paid when the well was spudded in, and that sum went directly to the company from which the spudder was purchased as the cash payment thereon. The petition further alleges that, under the terms of the contract with Douglass, $1,000 was due to the parties when the well reached a depth of 1,000 feet, which sum was paid and applied to the outstanding obligations incurred in connection with the drilling of the well. It is further alleged that Douglass paid the purchase-money notes at plaintiff's instance and request out of the amount earned by the parties under their contract for drilling the well.

To summarize at this point the effect of the allegations thus far, they show that, of the contract price of $6,000 paid by Douglass to them, the plaintiff and defendant jointly received the benefits of the following sums: $1,500 paid on the purchase price of the spudder and tractor; $2,345 paid in discharge of the notes given for the purchase price of the tractor; and $1,000 cash paid at the depth of 1,000 feet; making a total of $4,845 of the total contract price of $6,000 which the petition alleged was properly applied for the benefit of both parties.

The allegation is then made that in the prosecution of the drilling of the well the plaintiff made certain advances, which are set out in the petition, amounting to approximately $2,500. These advances were made, according to the petition, under an agreement that they were to be repaid to the plaintiff out of the proceeds of the contract with Douglass.

Follow, then, allegations to the effect that the defendant, after the completion of the Douglass contract, had used the drilling outfit in drilling other wells and in cleaning out wells, and recovery was sought by the plaintiff for rents at the rate of $800 per well. The prayer is that the receiver continue in office; that plaintiff be quieted in his title

to one-half interest in the drilling outfit; that the property be partitioned; for judgment in the sum of $2,500 as rents; and $2,476.75 for advancements on well No. 1; and also that a lien be declared in favor of plaintiff against the partnership property to secure the alleged indebtedness of defendant to plaintiff. General relief is also prayed for.

The defendant answered by general demurrer, various exceptions, general and special denial, and, by way of cross-action, prayed for damages against the plaintiff for wrongfully and maliciously having the receiver appointed. The case was tried by the court and jury. At the conclusion of the evidence, it appears that each party presented to the court various issues which he thought should be submitted to the jury. The charges of the plaintiff were on one sheet of paper, but the charges of the defendant were on separate sheets. The court did not prepare any charge or instructions to the jury at all, but put together such special requested charges as he thought were proper and submitted them to the jury. These charges and the answers thereto were as follows:

"Special Issues Requested by the Plaintiff.

"Issue No. 1: How much money, if any, did the plaintiff, H. W. McGee advance and pay out in the prosecution of the drilling of Well No. 1, on the Graham Ranch in Brown County, Texas? State the amount in dollars and cents. Answer: None.

"Issue No. 2: What is the reasonable rental value of a drilling outfit such as described in plaintiff's petition per well, if the average depth drilled is 1,600 feet? Answer: None.

"Issue No. 3: What do you find, from the evidence, if any, was the rental value of said tools and drilling outfit on several cleaning out jobs by the defendant? Answer: None.

"Special Issues Requested by the Defendant.

"Issue No. 1: Did H. W. McGee, on or about the last of April, 1926, agree with Clark Cunningham that Clark Cunningham should assume the indebtedness on the property in question together with all bills due by the partnership of McGee & Cunningham on Well No. One of James B. Douglass on the Graham Ranch in Brown County for the interest of McGee in the property in question? Answer 'Yes' or 'No.' Answer: Yes.

"Issue No. 2: How much actual damage, if any, will reasonably compensate the defendant, if paid in cash now, for the suing out by the plaintiff of the receivership in question? Answer in dollars and cents. Answer: None.

"(Here follow instructions by the court.)

"Issue No. 3: Did the plaintiff act with malice in suing out the receivership in question, as that term is hereinafter defined to you? Answer 'Yes' or 'No.' Answer: Yes.

"('Malice' is here defined.)

"Issue No. 4: How much exemplary dam-

ages, if any, do you find that Defendant has sustained? Answer in dollars and cents. Answer: None."

■ There are no bills of exception in the record as to the admissibility of any evidence, and no showing that any of the demurrers or exceptions were ever presented to, or acted upon by the trial court. Neither are there any objections shown to have been made to the charge of the court. The only questions presented for our decision relate to the sufficiency of the evidence to support certain findings, and the alleged misconduct of the jury in their deliberations. In his brief, commendable both as to substance and form, appellant presents very forcefully that the jury was guilty of misconduct. In connection with his motion for a new trial, appellant placed four jurors on the witness stand. The testimony of these four jurors is rather convincing that an agreement was entered into to the effect that the answers to the issues requested by plaintiff and to issues Nos. 2 and 4 requested by the defendant were not made with reference to the evidence offered on these particular issues, but that it was agreed that neither party was entitled to damages against the other, and that, according to the jury's understanding of the law, if plaintiff were given damages against defendant and defendant a like sum against plaintiff, one or the other of the parties might be insolvent, and, as a result, one party could collect his damages, while the other could not. It was therefore agreed that these issues would be so answered as that neither party would have a judgment for money against the other. We think it is well established that such agreements by jurors constitute misconduct. Harvey v. G., O. & S. F. Ry. Co. (Tex. Civ. App.) 261 S. W. 197, affirmed (Com. App.) 276 S. W. 895; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941; City of Waco v. Rast (Tex. Civ. App.) 2 S. W. (2d) 563.

■ But the mere fact of misconduct does not necessarily constitute reversible error. If it affirmatively appears from the record as a whole that the misconduct was with reference to immaterial issues, which should never have been submitted, or those rendered immaterial by answers to other issues, and that such misconduct did not enter into the answers to the material issues submitted, we would not be warranted in reversing the judgment of the trial court and ordering a new trial on that account. With this rule in view, let us examine the issues before the jury.

Issue No. 1 requested by the plaintiff was, under his pleading, clearly immaterial. He alleged no contract between him and the appellee whereby the appellee assumed personal liability to him for these advances, but expressly alleges that he was to be compensat-

ed out of the proceeds of the contract with Douglass from well No. 1. In his petition he accounts for all of the proceeds out of this contract except a little more than $1,000. It was established by the evidence that Cunningham made no money whatever on this contract, but that it resulted in a loss. On account of the unusual drilling conditions, it required practically six months to drill this well to a depth of less than 1,900 feet. The appellant did not request any issue as to whether there were any proceeds derived from the drilling of this well to apply on his advances. Clearly the laborers and those furnishing supplies had a claim to this balance of a little more than $1,000 superior to the claim of appellant, who was a partner and employer. Had the jury answered this issue in such way as to find that appellant made advances, a judgment could not have been entered thereon against the appellee.

■ Issue No. 2 requested by appellant was wholly immaterial. Suppose the jury had found, in answer to this hypothetical question, the rental value of the drilling outfit "if the average depth drilled is 1,600 feet." No judgment could have been rendered thereon against appellee. Appellant alleged a partnership in the property. One partner has no right of action against the other partner for rents on the partnership property. Under appellant's pleadings he was entitled only to one-half of the profits made in the drilling operations and incurred a liability for one-half of the expenses. Under such pleading he could not be awarded a judgment for rents against his partner. The immateriality of each of the above issues will more clearly appear hereinafter when appellee's issues are considered. What has been said with reference to special issue No. 2 requested by appellant applies equally to special issue No. 3.

Considering next the issues requested by appellee. We think issue No. 1 was a material issue under the pleadings and the evidence. The controversy centered around the question of whether appellant had sold his interest in the drilling outfit to appellee before the completion of well No. 1, in consideration of the assumption by appellee of the indebtedness against same and the bills due by the partnership. The jury resolved this issue in favor of the appellee. That issue having been answered in the affirmative makes more certain the immateriality of the issues requested by appellant; for profits, if any, earned after appellee purchased the property should not be applied to appellant's advancements made prior to the sale, and, if appellant owned no interest in the property at the time appellee was using same for drilling and cleaning out wells, clearly it is immaterial what the rental value thereof was.

■■ We have carefully considered the evidence of the four jurors with the view of de-

termining whether their answer to issue No. 1 of the appellee was influenced by misconduct, and we are convinced that the evidence of these jurors was sufficient to warrant the trial court in holding that this issue was answered by the jury in accordance with their interpretation of the evidence, and represented their real conclusions with reference thereto. Necessarily, when jurors are placed on the stand and questioned closely with reference to all of the proceedings in the decision of a case submitted in the manner in which this case was submitted, some discrepancies in the testimony will arise. In such case it is the duty of the trial court to weigh all the evidence by all the jurors who testify and consider it as a whole. Thus considering it, if it is reasonably doubtful as to whether the misconduct influenced the answer to any material issue, it is the duty of the trial court to order a mistrial; but, where all the evidence construed together leads to the certain conclusion that the misconduct did not affect the answer to the only material issues, but only to the immaterial ones, the judgment should not be disturbed.

It seems that defendant's issue No. 1 was the first one considered. One of the jurors testified, when questioned with reference to the answer to that issue: "Well, there wasn't any argument by the jury, I think they were all of the same opinion. * * * We answered that question 'Yes' and in answering it that way we were taking into consideration the testimony of the witnesses as best we could. * * * The jury didn't consider any outside matters other than what was adduced from the witness stand. I didn't and I don't think the rest of them did."

Another juror testified: "The twelve of us agreed that we would answer question No. 1 of the defendant to the effect that there was a trade made between them in April, 1926, whereby Cunningham took over the outfit. We all agreed to answer that 'Yes.' In arriving at the verdict on that issue we were controlled solely by the testimony in the case. In arriving at other issues as requested by both defendant and the plaintiff, we deliberately agreed to answer those questions so that neither of them would get any damages, and that is the way we answered them, regardless of how we believed the question should have been answered from the testimony."

This evidence, taken in connection with all of the other evidence adduced, warranted the trial court, in our opinion, in refusing to set aside the answer of the jury to this particular issue.

■Regarding the other issues requested by the defendant, it may be well to state that we do not believe that favorable answers thereto would have entitled the defendant to judgment against the plaintiff under the pleadings in the cross-action. It is unneces-sary to go into the question of damages for wrongfully placing the property in the hands of a receiver, because that question is not material here. We therefore merely express a doubt as to whether defendant, under his pleadings, would have been entitled to such damages under any answers which the jury might have made to the questions submitted. But, granting the materiality of these issues, it was the defendant rather than the plaintiff who suffered injury by the misconduct of the jury. Clearly a judgment could not have been rendered in favor of the plaintiff against the defendant on favorable answers of the jury to the issues requested by plaintiff, as pointed out above. Had the jury not made the agreement with reference to framing their answers to these issues, and had found damages for the wrongful appointment of the receiver, the court might have been compelled to render judgment in favor of the defendant against plaintiff for such damages and deny plaintiff any damages against the defendant to offset same. It therefore affirmatively appears to us from the record that, if any injury resulted to either party from the misconduct of the jury, it was the defendant, and not the plaintiff, who suffered such injury, and, as the defendant is not complaining, we should not disturb the judgment on account of such misconduct.

■With reference to the contention urged as to the insufficiency of the evidence to support the findings, but little needs be written. It is not claimed that the evidence is insufficient to support the findings of the jury in answer to issue No. 1 of the defendant. The evidence amply supports the answer to this issue. The other issues being immaterial, it is clearly immaterial whether they were supported by the evidence.

■It is complained here that, in answering special issue No. 1 requested by the plaintiff as to the amount of his advances, the jury took into consideration the value of the defendant's labor in drilling the well, an item not pleaded by the defendant. The testimony of the jurors indicates that at least some of them did consider that, under the agreement between the parties, Cunningham's wages were furnished on the same basis as McGee's advances. This matter was not pleaded, and it is here urged that the jury was guilty of misconduct in considering evidence introduced before them which was not supported by the pleadings. Such contention places a great burden upon a jury. If evidence is introduced on the witness stand, under the rulings of the court, it is not within the province of the jury in their deliberations to study the pleadings of the parties and determine, as a matter of law, whether such evidence has support therein. It is peculiarly the function of the attorneys to make objections and of the court to rule thereon, and it is never misconduct on the part of

the jury to consider all of the evidence offered on the witness stand under the rulings of the court.

After a careful consideration of the facts, in the light of the pleadings and the issues in controversy, we are convinced that the record affirmatively discloses that appellant was not injured by the misconduct of the jury.

The cause should be affirmed. It is accordingly so ordered.

### On Rehearing.

A very careful reconsideration of both the evidence and the pleadings has convinced us that the holding in our original opinion, that issue No. 1 requested by the plaintiff was immaterial, was erroneous. That issue called for a finding by the jury as to the amount of the advancements made by appellant in the drilling of well No. 1. We construed the pleadings of appellant as limiting his right to recover any amount on account of such advancements to the contingency that profits were realized out of the drilling of that particular well. We now believe that we applied a too strict construction to the pleadings, particularly in view of the fact that there were no demurrers or exceptions before us challenging the sufficiency thereof. The allegation of the petition with reference to the advancements contained this language: "For all of which he was to receive and was entitled to an accounting from the defendant, and the same was to be repaid to him out of the proceeds of said contract." We construed that allegation as alleging that he was not to be entitled to reimbursement for advances unless there were profits realized out of "said contract." We now think the allegation is susceptible of the construction that he was entitled to an accounting from the defendant, and that the mere allegation that advancements were to be repaid out of the proceeds of a particular contract did not necessarily negative the fact that he would be still entitled to an accounting out of future earnings, should no profits be derived from the first contract.

We perhaps also were not authorized to hold, as a matter of law, that the contract for the drilling of well No. 1 resulted in a loss. The preponderance of the evidence is in favor of that holding, but there is evidence to the contrary. McGee testified that profits were made. That testimony presented an issue of fact which required its submission by the court to the jury, even though it might be regarded as against the preponderance of the testimony.

There is this further fact to be noticed. Issue No. 1 requested by the defendant submitted the issue whether Cunningham assumed the indebtedness on the property, together with all bills due by the partnership as the consideration for the purchase of McGee's interest in the drilling outfit. It cannot be determined certainly that in answering that issue the jury did not classify the advancements made by McGee as an indebtedness on the property. The evidence discloses that McGee expended money for freight, etc., when the drilling outfit was purchased. Such expenditures may have been regarded as indebtedness, and the answer of the jury is broad enough to include such advancements as a part of the indebtedness assumed by Cunningham. With all of these considerations in view, we now think that it cannot be said as a matter of law that issue No. 1 requested by the plaintiff was wholly immaterial.

It being fully established by the evidence that the misconduct of the jury entered into the answer to this issue, and it being further disclosed in the statement of facts that the answer thereto was wholly unsupported by the evidence, we are convinced that a prejudicial error is presented. The following recent authorities, not cited in the original opinion, will disclose the strictness with which the appellate courts apply and enforce the rule against misconduct in the jury room. Seale v. Schultz (Tex. Civ. App.) 3 S.W.(2d) 563; St. L. S. W. Ry. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; St. L. S. W. Ry. Co. v. Smithhart (Tex. Civ. App.) 9 S.W.(2d) 146; T. & N. O. Ry. Co. v. Parry (Tex. Com. App.) 12 S.W.(2d) 997; Giles v. Tyson (Tex. Civ. App.) 13 S.W.(2d) 452.

In the very recent case of McFaddin v. Hebert, 15 S.W.(2d) 213, in an opinion answering certified questions, which was adopted by the Supreme Court, this language is used: "The courts of this state have repeatedly held that it is error for the jury to first determine who they want to prevail in the suit and then designedly form their answers to special issues to accomplish that desire."

The motion for rehearing will be granted, the judgment of this court affirming the judgment of the trial court will be set aside, and judgment will be entered reversing the judgment of the trial court, and remanding the cause for another trial.