## KENNARD et al. v. KENNARD et al.

### No. 898.

Court of Civil Appeals of Texas. Waco.
Feb. 20, 1930.

Rehearing Denied March 27, 1930.

Slay & Simon and Hampden Spiller, all of Fort Worth, and Ward & Ward, of Cleburne, for appellants.

Walker & Baker and F. E. Johnson, all of Cleburne, for appellees.

BARCUS, J.

This suit involves a controversy between the children of M. L. Kennard over the estate of their deceased father. Appellants, two of the boys, claimed to own the stock of cattle and horses and other personal property on the ranch as their individual property, the other children claiming that it belonged to the estate of their deceased father. The record shows that for a number of years prior to the death of M. L. Kennard his two boys, who are appellants herein, operated the ranch, managing and controlling same. During the years prior to 1923 they had become involved to the extent of $20,000, and M. L. Kennard borrowed said amount on his land and paid same. The cause was tried to a jury, submitted on special issues, and the jury found that the property in controversy belonged to the M. L. Kennard estate.

Appellants present the appeal on the sole question of the misconduct of the jury, their contention being that one of the jurors was prejudiced against them and by reason thereof volunteered statements and information in the jury room which require the cause to be reversed. The question was properly raised by appellants in their motion for rehearing in the trial court and ten of the jurors testified at said hearing. It appears that as the jury went into the jury room, Womack, one of them, remarked that it was going to be a very difficult case to decide, to which the juror Harper replied, as related by juror Lee: "Hell, no, there won't be nothing hard about that. I know those boys, that's easy. I know those boys' reputation and I wouldn't give them anything." There is a sharp dispute between the jurors as to the exact language used by said juror in answering said remark of the juror Womack. After the jury had selected their foreman, the first ballot stood five for the plaintiffs and seven for the defendants. The jury remained out until the

following day, and while they were deliberating upon the verdict, on the second day, one of the jurors asked what became of the $20,-000. The juror Harper answered, according to the testimony of some of the jurors: "Well, I can tell you what went with a big part of it. It went into big automobiles and a good time." Most of the jurors heard this last statement, there being some sharp discrepancies in reference to the exact language used. The juror Mr. Buchan testified as follows: "With reference to these remarks I testified about that I heard in the jury room relative to where the $20,000.00 went, I wouldn't like to say that they had any influence on my verdict, but subconsciously they might have had some. It is hard to say how a thing reacts on anybody. I wouldn't go to the length of saying it had any effect, but I don't know. When I heard those remarks it did not make a good impression on my mind * * * I said that I did not think that the statement that Mr. Harper made had any effect on me, but that possibly it might have had some subconsciously. I didn't know how it reacted. I wasn't sure whether it had any effect on me or not." The juror Mr. Ballinger testified: "I did not know the Kennard boys before this case was tried. The discussion in there and the reference as to the boys spending money and the remark, 'Hell, that's easy, I know those boys,' did not have anything to do with my deciding this case, I don't think. I wouldn't swear that it didn't but I don't think it did. I wouldn't say positive that it didn't but I don't think it did. I don't think it had any effect whatever. I tried to try the case according to the law and the evidence. I didn't think these things should have been said in the jury room. I don't know whether it was right or wrong. I didn't think things like that should have been said in the jury room. I think I tried the case according to the law and the evidence in the case." Each of the above two jurors on the first ballot voted for the plaintiffs, and finally joined the others and returned a verdict for the defendants. In the examination of the jurors on their voir dire before they were accepted each juror was specifically asked if he had bias in favor of or prejudice against any of the parties to the suit, and each of them stated that he did not.

The rule seems to be well established that unless it appears that no probable injury has been occasioned by the misconduct of the jury, same will require a reversal; the burden being placed upon the offending party to show that no probable injury has occurred. It is not required of the complainant to show that probable injury has occurred. The right to a trial by jury has always been held sacred. Litigants are entitled to a jury trial by men who are unbiased or unprejudiced, and the jury is required to decide the case from the evidence as given to them from the witness stand. Two of the jurors in this case testified that they could not tell definitely whether the remarks made by the juror Harper influenced them or not. Unquestionably, said remarks should not have been made and were improper. If the statement was made as strong as the juror Lee testified, the juror Harper was not only showing his prejudice and bias against appellants, but was testifying that their reputation for truth and veracity was bad. The record shows that the juror Harper was sixty-seven years old and had known and been acquainted with appellants for fifteen or twenty years. It is not made to appear in this case that no probable injury was occasioned appellants by the remarks and conduct of said juror. Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104, 1106; Rhoades v. El Paso & S. W. Ry. Co. (Tex. Com. App.) 248 S. W. 1064, 1066, 27 A. L. R. 1048, and authorities there cited; Northern Texas Traction Co. v. Bryan (Tex. Civ. App.) 299 S. W. 325, 333; Houston & T. C. Ry. Co. v. Gray (Tex. Civ. App.) 137 S. W. 729.

In Southern Traction Co. v. Wilson, supra, the facts are very similar to those in this record. There one of the jurors testified that he could not say the discussion (about attorney's fees) influenced him; that it was a hard question for him to answer as to whether it affected him or not. The court, in reversing the judgment by reason of the misconduct of the jury, stated: "A reading of the entire record leads almost to the conclusion that the juror was improperly influenced. At any rate, he himself was uncertain about it. So are we." In this case two of the jurors testified that the statements of the juror Harper might have influenced them; that they could not say it did not, and they were not sure that same had not influenced them.

In Rhoades v. El Paso & S. W. Ry. Co., supra, the Supreme Court, speaking through the Commission of Appeals, stated: "If the evidence taken on the hearing of a motion for new trial, based on such ground [misconduct of the jury], leaves it reasonably doubtful whether statements of fact improperly made before the jury affected the verdict, the Supreme Court has authority to set such verdict and the judgment rendered thereon aside."

In Northern Texas Traction Co. v. Bryan, supra, in which case a writ of error has been granted, the Court of Civil Appeals held that there was not such misconduct as required a reversal. It stated, however, that the rule was: "The testimony of a juror, is receivable in open court to impeach a verdict, and that, if the court finds that the verdict of a single juror was influenced in a material matter by some extraneous matter or unauthorized communication, the verdict should be set aside and a new trial granted"—citing a large number of authorities.

We think the trial court in this case was in error in refusing to set the verdict of the jury

aside because of the bias of the juror Harper and the misconduct in the jury room occasioned by the remarks of said juror.

The judgment of the trial court is reversed, and the cause remanded.