### WALKER v. QUANAH, A. & P. RY. CO.
### No. 1632—6047.

Commission of Appeals of Texas, Section A.
March 15, 1933.

Killough & Dotson, of Vernon, for plaintiff in error.

C. Y. Welch, of Quanah, and G. E. Hamilton, of Matador, for defendant in error.

HARVEY, Presiding Judge.

H. J. Walker sued the Quanah, Acme & Pacific Railway Company for damages in the sum of $25,000 on account of personal injuries alleged to have been received by the plaintiff in a crossing collision. Various acts of negligence were charged against the railway company. The company defended on the ground of contributory negligence, among other grounds of defense. The case was tried to a jury on special issues. In answer to the first sixteen special issues, the jury found that the railway company was negligent in the various respects inquired about, and that such negligence was the proximate cause of the plaintiff's injuries. In answer to special issue 17, the jury found the amount of the plaintiff's damages to be $3,000. To special issue No. 18 the jury answered "No," which had the effect of finding that the plaintiff did not use ordinary care, on the occasion in question, in certain respects inquired about, and therefore was guilty of contributory negligence. The verdict containing the above findings was received by the trial court, and judgment for the railway company was entered, based on the finding of contributory negligence under special issue 18. In due time the plaintiff filed and presented his motion for new trial, setting up as ground therefor the misconduct of the jury in respects hereinafter shown. The motion for new trial was overruled. The case was appealed to the Court of Civil Appeals, and that court affirmed the judgment of the trial court.

At the hearing of the motion for new trial, a number of the jurors in the case were called to testify concerning the alleged acts of misconduct. It appeared from the testimony, without material conflict, that, after the jury had agreed upon their answers to the first seventeen special issues, and while they were considering their answer to special issue 18, the question was raised by some of the jurors as to whether or not a negative answer to said special issue would defeat a recovery by the plaintiff of the $3,000 damages already found by the jury. After some discussion among the jurors of the question thus raised, at least one of the jurors stated, in effect, that a negative answer to said special issue would not prevent the plaintiff from recovering the $3,000 damages, and thereupon all the jurors agreed to answer said special issue "No," as they did. It might be well to say further that one or more of the jurors, during the discussion of the above question, expressed the opinion that a negative answer to said special issue would defeat the plaintiff's case entirely. The trial court filed his conclusions of fact in which the following fact findings were made, there being testimony to support such findings:

"I find that the jurors answered the first sixteen (16) special issues presented to them in the court's charge, the first day after the case was submitted to them, and that they

adjourned for the night, and upon returning the next morning they requested that the testimony of the plaintiff be reproduced and upon agreement of counsel the same was read from the court reporter's shorthand notes; that they then returned to the jury room, and after a reasonably short time they returned with all of the questions answered, as shown by the main charge submitted to the jury in this cause.

"I find that in the evening of the first day of the jury's deliberations they took a vote on the 18th special issue in the court's charge pertaining to the contributory negligence of the plaintiff, and the jury stood ten (10) in favor of voting 'yes' to said special issue, which would have meant that the plaintiff was not guilty of contributory negligence, and two (2) voted that said special issue should be answered 'no'; that upon returning to the jury room the next day, after having had the testimony of the plaintiff read to them, they took another vote on said question, and the jury stood six (6) to six (6). That thereupon some considerable discussion arose as to the effect the answer to said special issue would have on the ultimate result of the suit, and it was remarked by some one of the jurors that it would not make any material difference, that the plaintiff would get three thousand ($3,000.00) Dollars anyway, regardless of how special issue No. 18 should be answered, and practically immediately thereafter the jury arrived at a verdict answering special issue 'no.'"

It thus appears from the fact findings of the trial court that the acts of misconduct of which the plaintiff complains actually occurred. To say the least, there arises a reasonable doubt as to whether or not such misconduct affected the verdict in a material way. Indeed, it could be safely said, from the facts stated, without taking into consideration the testimony of jurors regarding their mental operations, that it appears with a reasonable degree of certainty that the misconduct did affect the jury's verdict in material respects. The well-established rule is stated by Judge Critz in Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372, 374, in these words: "It is certainly the settled law of this state that if, upon a consideration of the whole of the pertinent record bearing on the issue of misconduct, it is reasonably doubtful to the Supreme Court whether the misconduct affected the verdict in a material way, the verdict will be set aside and a new trial granted. [Citing authorities.] On the other hand, it is also the law that, where there is a disputed issue of fact as to whether the misconduct actually occurred, such issue is for the trial court, and his findings on a disputed issue of fact should not be disturbed by an appellate court, where such findings

are supported by the record, even though disputed by other portions of the record."

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be reversed, and that the cause be remanded.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.