### TEXAS EMPLOYERS' INS. ASS'N v. BURNETT.
### No. 2614.

Court of Civil Appeals of Texas. Beaumont.
Dec. 7, 1934.

Rehearing Denied Dec. 26, 1934.

Calhoun & Marcus, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

WALKER, Chief Justice.

This was a workman's compensation case. Estelle Oil Company was the employer, J. W. Burnett the employee, and appellant, Texas Employers' Insurance Association, the compensation insurance carrier. On August 26,

1930, while in the course of his employment, Burnett was struck on the forehead by a piece of iron piping, from which he suffered a severe injury. His claim for compensation was regularly prosecuted to the Industrial Accident Board, from which appeal was regularly prosecuted to the district court of Jefferson county, where a judgment, on the 8th day of April, 1931, was rendered for him for total permanent incapacity. Burnett died the 11th of September, 1931. The district court judgment was regularly prosecuted to this court, and by our judgment reversed on the 13th of June, 1932. See Texas Employers' Ins. Ass'n v. Burnett, 52 S.W.(2d) 771. Petition for writ of error was dismissed by the Supreme Court the 18th day of January, 1933; rehearing denied the 15th day of February, 1933. On March 13, 1933, appellees, the surviving widow and minor children of J. W. Burnett, filed with the Industrial Accident Board their claim for compensation for the death of J. W. Burnett. Not being satisfied with the award of the board, after giving due notice, appellees prosecuted their appeal to the district court of Jefferson county, where it was regularly tried to a jury on the 4th day of October, 1933, with judgment for them against appellant for 360 weeks, beginning September 11, 1931, the date of the death of J. W. Burnett, at $17.30 per week. The recovery was apportioned by the judgment among the widow, the five minor children, and their attorneys.

Burnett died of typhoid fever, contracted about two weeks before his death, which was about eleven months after he was injured. Typhoid fever is a germ disease, and the fact that Burnett was injured on the 26th of August, 1930, contributed in no way to his contracting the disease, but, as a result of his injuries, his "personal" resistance was lowered, and the issue was raised by the evidence that his "lowered resistance" was a "producing cause" of his death. In support of this fact conclusion we quote as follows from the statement of facts: Dr. Edward C. Ferguson gave the following testimony: "Q. Doctor, I will ask you one or two hypothetical questions. Mr. J. W. Burnett, a man about forty years of age, was employed and working out here at Spindletop, was helping to pull some heavy casing out of a well, and in doing this on August 26, 1930, one of the pieces of casing about fifteen feet in length came loose and hit Mr. Burnett a blow over his eye, rendering him unconscious, or at least partially so, for a time; thereafter he was taken to the hospital where he remained for about a week under treatment and then he was discharged; it left a rather bad scar over his eyebrow about an inch and a half in length probably; after that time Mr. Burnett complained of headaches and dizziness and of seeing spots before his eyes and of sickness with his stomach, especially after exertion and Mr. Burnett did very little work from that time on until his death, which occurred September 11, 1931, and previous to the time of his death he had been in a highly nervous condition, sick at his stomach and complaining of a great deal of pain, now under those facts, Doctor, I will ask you to state your opinion as to whether the blow on his head on August 26, 1930, was at least one of the producing causes of the death of Mr. Burnett. A. If this man had these symptoms through the remainder of his life and it was connected with his original injury, it must have a tendency to lower his resistance and, of course, would contribute to his demise." Another hypothetical question propounded to Dr. Ferguson assumed that, prior to his injury, Burnett had none of the symptoms enumerated in the first question, and that, after his injuries, these symptoms were of a continuous nature; on that assumption the question was asked the doctor whether or not the blow was a contributing cause of Burnett's death; to that question he answered: "A. It sounds more probable that the injury must have contributed to his death if he had been in perfect good health previous to the injury and after that he had continuous disability associated with these symptoms."

The doctor gave the following additional testimony: "Q. Doctor, with respect to that last question, assuming that any person had those symptoms, would you say that in such event it was probable that the blow upon the head had been the cause of the death of that person occurring under the facts stated? A. I wouldn't say it would cause his death, I don't know that, but it might contribute to his death."

And on cross-examination:

"A. I made a general statement a while ago that if a man's resistance is lowered and his resistance is lower than any other average normal individual, anything he might have in the way of infection he would be more likely to die than an individual who hadn't had that injury.

"Q. There is no more connection between that injury—there is no connection between a man receiving an injury and catching typhoid fever is there? A. No.

"Q. In other words, he could have caught typhoid fever irrespective of whether he was injured or not, isn't that a fact? A. Sure.

"Q. Whether or not he died or survived it, the injury might not have had any bearing on it at all? A. Right.

"Q. One man may be in poor health and weak and survive a case of typhoid and another man healthy in all respects might die from it? A. Correct.

"Q. And the virulence of the case depends on whether or not the man would survive or not wouldn't it? A. Personal resistance is the determining factor.

"Q. There are various degrees of typhoid aren't there? A. I don't know whether there are various degrees.

"Q. There could be a virulence, more severe case, in one instance than another? A. We classify them that way but it's based on the individual resistance.

"Q. Could you answer the question or not?

"Mr. Cruse: I think he has answered it.

"The Court. Yes he's answered it.

"Q. What treatment has to be given for typhoid? A. There is no standard treatment for typhoid, it's largely symptomatic treatment; one of the latest treatments is vaccines.

"Q. Wouldn't a man be more likely to recover if he was treated promptly after contracting it? A. I don't know what would be proper because there is no standard treatment or no mathematical treatment. Typhoid is handled symptomatically. You control the fever, sustain the individual, and nursing and rest. But as far as any standard treatment, there is no definite rule to treat typhoid fever.

"Q. If a man contracted typhoid and had it for sometime before a doctor was called in to give him treatment wouldn't he be less likely to recover than if a doctor had been called in at the very outset? A. I think so.

"Q. Assuming that Mr. Burnett contracted typhoid sometime previous to his death, and that the attending physician diagnosed his case as typhoid and that laboratory tests reflected the fact he had typhoid, and that the attending physician concluded he did have typhoid and died from it, you would say that was the direct cause of his death wouldn't you? A. Yes sir.

"Q. So far as you know typhoid was the direct cause of Mr. Burnett's death wasn't it? A. As far as I know; I never saw him.

"Q. The injury then was not the direct cause of his death? A. I wouldn't consider it as such.

"Q. Wasn't the primary cause of his death? A. No sir.

"Q. The only bearing the injury could possibly have had on his death is the fact it might possibly have lowered his resistance? A. That's it.

"Q. The injury didn't cause the typhoid fever? A. No.

"Q. The injury didn't cause his death then did it? A. Not that I know of.

"Q. Under that—assuming that state of facts I've just given you, the injury didn't cause his death? A. The primary cause of death should have been typhoid fever.

"Q. The only connection between the injury and his death is his resistance would be lowered? A. No.

"Q. You have stated there is no way of telling whether a man may or may not recover from typhoid? A. Yes sir.

"Q. It's just possible that there's no way of knowing why Mr. Burnett didn't recover. So far as you can say, Doctor, a man's resistance can be lowered from numerous other things besides an injury? A. Yes sir.

"Q. He might have internal infections, might have had previous diseases that might have lowered his resistance? A. Yes sir, that's correct.

"Q. You are not in position to say whether Mr. Burnett's resistance was lowered of your own knowledge or not are you? A. Only from his history; if he had continuous pain, loss of sleep, and all kinds of mental disturbances, we would assume that generally speaking that his resistance must have been lowered.

"Q. Now doctor how long does it take typhoid fever to develop? A. About seven to fourteen days.

"Q. Is that what you call the incubation period? A. Yes sir.

"Q. That means from seven to fourteen days after the germ gets into the body of the patient then follows the first symptoms of typhoid? A. Yes sir.

"Q. And it's after that the laboratory tests will confirm that? A. Yes.

"Q. About how long does typhoid generally last? A. Generally completes its course in an average period of six weeks, it may be longer, may last three months or longer.

"Q. Assuming Mr. Burnett died on September 11, 1931, from typhoid, and that he had been ill approximately two or three weeks before his death, you would say then that he developed that typhoid sometime within fourteen days prior to the time he first took sick wouldn't you? A. At least that much.

"Q. And that prior to that time he was free from it? A. Yes.

"Q. And without the presence of those germs in the body, those typhoid germs, it is impossible for a man to contract typhoid, isn't it? A. That's correct.

"Q. No matter how severe an injury a man might receive, the injury itself couldn't possibly cause typhoid? A. No sir."

Appellant's witness, Dr. W. S. Tatum, gave the following testimony:

"Q. Assuming that the facts—you heard those eleven or more things I indicated there in the hypothetical question, headaches, dizziness, lapse of memory, unable to concentrate, those various things, assuming the record shows those things existed after the injury and they didn't exist before the injury, and assuming that this man died on September 11, 1931, would you or not say that such an injury as I have indicated, with those attendant things, would you or not say that the injury had something to do with the death? A. I would say yes, such things existing would be a predisposing cause.

"Q. By that you mean producing cause, do you? A. Yes."

On the evidence quoted, the jury gave an affirmative answer to the following question: "Do you find, from the preponderance of the evidence. that the injury received by J. W. Burnett on or about August 26, 1930, was the producing cause of the death of the said J. W. Burnett?"

By its first five propositions appellant asserts that it should have had an instructed verdict and attacks the verdict of the jury as being wholly without support in the evidence, on the point that the injury received by Burnett on the 26th of August, 1931, was not in law a "producing cause" of his death.

"Proximate cause" is not an issue in a cause of action under the provisions of our Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.); it is necessary to show only that the injury complained of was a "producing cause" of the death or disability in issue. Travelers' Ins. Co. v. Peters (Tex. Com. App.) 14 S.W.(2d) 1007. The controlling issue is the continuity of the chain of causation between the alleged injury and the incapacity or death for which compensation is sought. The three controlling elements of proximate cause are: (a) A regular chain of causation, (b) not broken by a new independent cause, and (c) anticipation. To what extent is a claimant under our Workmen's Compensation Act relieved of the burden of establishing proximate cause? The Peters Case, supra, and the Smith Case (Tex. Civ. App.) 266 S. W. 574, 575, relieve him of the burden of proving "anticipation." Appellant insists that the decisions have gone no further; that the claimant must establish a continuity of causation, unbroken by any intervening independent agency. In support of this proposition, appellant quotes, as follows, from Corpus Juris Treatise on Workmen's Compensation Act, page 70: "In determining whether the physical harm sustained by the employee was the consequence of the accident or the injury, the controlling question is the continuity of the chain of causation and the absence of any intervening independent agency; the inquiry as to whether the result is the natural and probable one is immaterial." Appellant also cites Upham's Case, 245 Mass. 31, 139 N. E. 433, 434, where it was said: "As the appendicitis had no connection between the injury and the death, it could not properly be found that death following the operation resulted from the injury. The appearance of appendicitis, necessitating an operation which resulted in death constitutes a new and intervening cause wholly independent of and without any relation to the injury. As there was no causal connection between the injury and the death, the latter could not be found to have resulted from the former. The operation was an independent, intervening agency which broke the chain of causation. * * * As the only rational conclusion from the evidence is that the death of the employee resulted from the operation for appendicitis, a new and intervening agency, it is obvious that death did not result from the injury."

Appellant's proposition constitutes a correct construction of our Workmen's Compensation Act only where, as said in Upham's Case, there is "no causal connection between the injury and the death," that is, where the intervening independent agency constitutes the sole cause of the death. But, where there is a natural and continuous sequence between the injury and the death, though it may operate through and upon an intervening independent agency, the claimant falls within the protection of our Workmen's Compensation Act. The following authorities support this conclusion. In the Smith Case, supra, dis-

cussing our Workmen's Compensation Act, Mr. Chief Justice Hightower, speaking for this court, said that "the act contemplates that all injuries received by an employee in the course of his employment and while in the discharge of his duties, with certain stated exceptions, shall be compensated." The exceptions are as follows: (1) For injury caused by the act of God unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public; (2) an injury caused by an act of a third person intending to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment; (3) an injury received while in a state of intoxication; and (4) an injury caused by the employee's willful intention and attempt to injure himself or willfully injure some other person. All other injuries are compensable; provided, of course, the injury is the producing cause of the death or disability. See subdivision 5 of § 1, article 8309, R. S. 1925. Discussing the issue of proximate cause in Texas Traction Co. v. Nenney (Tex. Civ. App.) 178 S. W. 797, 800, the court asked the following question, suggesting a complete chain of causation: "Bearing in mind this rule [of proximate cause], can it be said that the agents of the appellant, whose misconduct caused the injuries to Nenney, should at the time have contemplated that he would receive some physical injuries, that these would cause a debilitated condition of his physical system, and that he would, in consequence thereof, fall a victim to some bacterial disorder?"

The Supreme Court of Michigan, in Tanner, v. Aluminum Co., 210 Mich. 366, 178 N. W. 69, held, quoting the syllabus: "In proceedings under Workmen's Compensation Act for compensation for death of employee, where there is evidence from which it can be inferred that the accident so reduced employee's vitality that he succumbed to an illness which caused his death, the court on certiorari will not disturb the Industrial Accident Board's finding that death resulted from the accident, though there is also evidence directly to the contrary."

In Commercial Standard Ins. Co. v. Noack, 62 S.W.(2d) 72, the Commission of Appeals held, quoting seventh syllabus: "Compensation for injuries to employee in course of employment will not be denied because injury was aggravated or enhanced by pre-existing or subsequent diseases."

In Employers' Liability Assurance Corp. v. Flint (Tex. Civ. App.) 14 S.W.(2d) 1046, following an acid burn, the employee developed blood poisoning which resulted in his death; compensation was allowed. In Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092, the employee was suffering from diabetes at the time of his death, having previously suffered a trauma; compensation was allowed.

In support of the contention that the disease must be directly attributable to the injury, appellant quotes from Bramble v. Shields, 146 Md. 494, 127 A. 44, 48: "It can make no difference whether the results are usual or unusual, if there is a direct causal connection between the injury and the disease, so that the disease is directly attributable to the injury." That case is authority only for the proposition announced therein. It does not deny the contention that, operating through the disease, the injury may constitute a contributing cause, or producing cause of the disability. In the case at bar the typhoid fever was an intervening independent agency. Burnett died as a direct result of the typhoid fever which was in no way produced or caused by the injury complained of. But this statement does not determine the issue in appellant's favor; the determinative inquiry was whether or not, but for the injury, Burnett would have died of the typhoid fever. The expert testimony given by the doctors made that issue one of fact for the jury, and the affirmative answer to the question quoted above constituted a regular chain of causation between the injury Burnett received on the 26th of August, 1930, and his death on the 11th day of September, 1931, making his death compensable within the purview of our Compensation Act.

In connection with the issue quoted above, the court gave the following charge: "In this connection you are instructed that the 'producing cause' is such as naturally resulted in the death of said J. W. Burnett." As the judgment of the lower court must be reversed for reasons hereinafter discussed, we do not discuss appellant's exceptions to this charge, but suggest that on another trial the court define "producing cause," as that term is used in the purview of our Workmen's Compensation Act, as that cause which, in a natural and continuous sequence, produces the death (or disability) in issue, and without which the death (or disability) would not have occurred.

Over appellant's objections, the trial court received in evidence the testimony giv-

en by J. W. Burnett upon the trial of his cause as reported supra. This evidence was correctly received. Under the holding of this court in Traders' & General Ins. Co. v. Baldwin (Tex. Civ. App.) 50 S.W.(2d) 863, based upon Texas Employers' Ins. Ass'n v. Morgan, 295 S. W. 588, by the Commission of Appeals, the cause of action of appellees in this case was, in substance, the same cause of action asserted by Burnett in his case. We think there was such an identity of issues and of persons between the two cases as to make the testimony of Burnett admissible.

But, independent of the testimony of Burnett, appellees established, as a matter of law, the issue that he was injured in the course of his employment; so, the court did not err in refusing to submit that issue to the jury.

■ Issue No. 2 and the charge given in connection therewith was as follows:

"Do you find, from the preponderance of the evidence, that the plaintiff has shown good cause for failure to make and file claim herein with the Industrial Accident Board of Texas for compensation with respect to the injury of August 26, 1930, prior to March 13, 1933, wherein claim for compensation was actually filed with said Board at Austin, Texas?

"Answer Yes or No, as you find the facts to be.

"For your guidance in answering the special issue with respect to 'good cause' as to filing of claim for compensation the court charges you as follows:

"You are instructed that the law requires a person claiming compensation to give notice of injury to the insurance company carrying the insurance for said injured employee's employer, or to give notice to such employer, within thirty days from the happening thereof (except where such employer has actual notice thereof), and also requires such person claiming compensation to make and file claim with the Industrial Accident Board of the State of Texas at Austin, Texas, with respect to such injury within six months after the death of such party, or in case of incapacity only, then six months after the occurrence of such injury, provided, however, that strict compliance with these requirements may be waived for 'good cause.'

"With respect to the meaning of 'good cause,' you are instructed as follows: The plaintiff, Mrs. J. W. Burnett, was required in the prosecution of this claim to use that degree of diligence which a person of ordinary prudence, situated as she was, would have used under the same or similar circumstances."

This issue and charge were subject to the following exceptions reserved by appellant: Appellees pleaded the specific grounds constituting good cause; the issue did not restrict the jury to the facts pleaded, but the jury was permitted by this question to answer the issue on all the evidence introduced before them. The recent opinion of this court in Texas Employers' Ins. Ass'n v. Fulkes, 75 S. W.(2d) 320, condemns this charge as error. Second, the charge told the jury the things required by law of a claimant to file his claim for compensation, and instructed the jury how the claimant could avoid the effect of failing to file his claim at the time and in the manner provided by law. Thus the charge instructed the jury that, though the law required appellees to file their claim within six months, yet the statutory requirement could be waived on a showing of good cause, and further instructed the jury, in effect, that for appellees to recover they must show good cause. The legal effect of this charge was to instruct the jury that, if they wanted to find in favor of appellees, they must find "good cause." This character of charge is condemned by the following cases: New Amsterdam Casualty Co. v. Scott (Tex. Civ. App.) 54 S.W.(2d) 175; Texas Employers' Ins. Ass'n v. Martin (Tex. Civ. App.) 296 S. W. 639; Solo Serve Co. v. Howell (Tex. Civ. App.) 35 S.W.(2d) 474; Diadone v. Houston Belt & Terminal R. Co. (Tex. Civ. App.) 26 S.W.(2d) 336; and, probably the leading case, Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557. Since the decision in McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, it is now clearly the law that an instruction constitutes reversible error which advises the jury of the effect of their answers.

For the reasons stated the judgment of the lower court is reversed, and the cause remanded for a new trial.

Reversed and remanded.