### TEXAS EMPLOYERS INS. ASS'N v. JOHNSON.

#### No. 13277.

Court of Civil Appeals of.Texas.
Fort Worth.

Dec. 13, 1935.

Rehearing Denied Jan. 10, 1936.

Todd, Crowley & Thompson, of Fort Worth, for appellant.

Ben M. Terrell, of Fort Worth, for appellee.

BROWN, Justice.

Appellee was the wife of Richard Mark Johnson, sometimes known as Robert Johnson, who died on May 15, 1930, while in the employ of Eckert-Burton Construction Company, which company was engaged in the erection of an office building in the city of Fort Worth, Tarrant county, Tex. Appellant is the insurance carrier, and this is a workmen's compensation case.

The undisputed evidence discloses that the appellee and the deceased had been

separated for about ten years; that she believed that he was dead and she had married a man named Ben Alexander, who is identified by some of the witnesses as the man for whom she abandoned her husband.

Appellee filed her claim for compensation with the Industrial Accident Board on August 11, 1932. In her petition appellee alleges that she is the surviving wife of said employee, and, in connection with the presentment of her claim to the said board, she alleges that she was ignorant of the law governing her rights and uneducated and did not discover her rights until just before she filed her claim with the board, that she was lulled into a sense of security by one of defendant's agents, and that, under the facts, she did not present the same within six months from the date of said accident and injury, and therefore good cause existed for her not having presented the same within the time above mentioned, and that this is such a meritorious case as is provided for in the Workmen's Compensation Law.

Appellee alleged that notice of fatal injury was made to the said board on May 17, 1930, by her deceased husband's employer, and that, just as soon as she definitely ascertained that she was entitled to, and there was owing, any compensation, she immediately filed her claim for compensation on August 11, 1932; and that such claim was not filed prior to such date because she did not know of the manner of her husband's death and did not know that she was entitled to compensation as a beneficiary, she being an illiterate and uneducated negro, with no business experience, and not knowing her rights and the procedure to follow; that in fact a representative of defendant approached her some time during the latter part of the year 1930, in Houston, Tex., and advised her that, because of her husband's death, she was entitled to some insurance, and that, when their investigation was completed, she would be paid something on account of his death; that such representative told her to sign instruments which were presented to her and that he and his company would attend to the collection of the insurance for her, which lulled her into a sense of security, and, relying upon such representations, she did not resort to other means of collecting the amount due her, and that she did not know there was such a thing as workmen's compensation, and, although she made inquiry of the representatives of the defendant insurance company concerning the place and manner of her husband's death, they told her they did not know anything about it, but that they would attend to the collection of the amount to which she was entitled.

Appellee further alleged that about August 10, 1932, her attorney, one J. H. Burr, advised her that he had ascertained from Austin, Tex., that her husband had been killed and the date and manner of his injury and death, and that she was entitled to compensation under the Workmen's Compensation Law (Rev.St.1925 art. 8306 et seq., as amended), and that immediately after ascertaining this fact, her lawyer prepared the necessary papers and she filed her claim as aforesaid.

The cause was tried to a jury, and four special issues were submitted, which, together with their answers, are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the plaintiff, Amy Johnson, after her marriage to Robert Johnson, in the State of Louisiana on June 8, 1910, did not abandon such marriage relation at any time thereafter without good cause, intending never to live with the said Robert Johnson as his wife again?

"You will answer 'she did not abandon him' or 'she did abandon him,' as you find the facts to be.

"Answer: She did not abandon him."

"Special Issue No. 2: If you have answered No. 1 above 'she did not abandon him', then you need not answer this question, but if you have answered 'she did abandon him', then answer this question:

"Do you find from a preponderance of the evidence that the abandonment by Amy Johnson of Robert Johnson, if you have so found, did not take place more than three years prior to the date of the death of Robert Johnson, on May 15, 1930?

"Answer 'it did not take place more than three years prior to May 15, 1930', or 'it did take place more than three years prior to May 15, 1930.'

"Answer: ———.

"Special Issue No. 3: Do you find from a preponderance of the evidence that the plaintiff Amy Johnson had good cause for not filing her claim with the Industrial Accident Board of the State of Texas until August 11, 1932?

1114

"Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 4: If the plaintiff Amy Johnson should under the law be entitled to compensation in this case, do you find from a preponderance of the evidence that the payment of said compensation to her in weekly installments instead of in a lump sum would result in a manifest hardship and injustice to her?

"Answer 'yes' or 'no.'

"Answer: Yes."

Judgment having been rendered for appellee on the verdict, after the motion for a new trial was overruled, the cause was appealed and is before us; appellant's brief presenting seven assignments of error.

■ The first assignment of error complains that the answer of the jury to special issue No. 1 is against the great preponderance of the evidence and should be set aside. In the first place, although this issue presents within its body the question of abandonment of the marriage relation by appellee without good cause, the trial court instructed the jury simply to answer this issue and find whether appellee did or did not abandon her said husband. On these instructions the jury simply found that appellee did not abandon her husband. If it can be said that the answer of the jury means that appellee did abandon her husband, but that she did not abandon him without good cause, all of which we do not believe the trial court was justified in so holding, nevertheless the finding of the jury is contrary to the great preponderance of the evidence.

Appellee testified that her deceased husband would get a little intoxicated and he would get over this condition and they would go back together; she testified both that he would drink a little bit and that he was a bad drinker; that he was arrested for drinking; that he was a "sorry negro about drinking"; that he left her on account of other women; that he was a preacher and took up preaching about the time she left. A part of this testimony is corroborated by appellee's witness, Pinky Brown, who testified that Richard would get drunk. But this witness testified that she did not get acquainted with the deceased until the year 1929, which was several years after appellee and the deceased separated.

■ An array of witnesses testified to the deceased's good reputation as a hardworking, sober, and industrious negro. And, while we believe that the great preponderance of the evidence is against the finding of the jury on this issue No. 1, yet we do not feel the necessity of sustaining the assignment of error because of the other errors in the record. And, because the same must be reversed and remanded, we suggest that the issue of whether or not appellee abandoned the deceased, and whether or not the deceased abandoned appellee, and the facts alleged and testified to raising the issue of good cause, be submitted to the jury and the question of good cause be left to the court on the answers thus returned.

■ The second assignment of error complains of the overruling by the trial court of appellant's objections to issue No. 3, found in the court's charge. This issue, as copied hereinabove, simply requested the jury to find from a preponderance of the evidence whether or not appellee had good cause for not filing her claim with the Industrial Accident Board until August 11, 1932. Such an issue has been condemned in the following cases: New Amsterdam Casualty Co. v. Scott (Tex.Civ.App.) 54 S.W.(2d) 175; Texas Employers' Ins. Ass'n v. Fulkes (Tex.Civ. App.) 75 S.W.(2d) 320; Texas Employers' Ins. Ass'n v. Martin (Tex.Civ.App.) 296 S.W. 639; and Texas Employers' Ins. Ass'n v. Burnett (Tex.Civ.App.) 77 S.W.(2d) 742.

Nowhere in the charge is there any attempt to request findings by the jury on the facts which are pleaded by appellee as constituting her good cause for not sooner filing her claim before the said board, and, in submitting the case, as was done, the trial court has permitted the jury to find on a question of mixed law and facts. We hold that the proper way to submit such a case as the one before us is to submit each separate issue of fact which is alleged to constitute good cause and for the court to apply the law on the findings of the jury, saying whether or not these findings as a matter of law constitute good cause. The second assignment of error is sustained.

The third assignment of error complains that the answer returned by the jury to issue No. 3 is against the great preponderance of the evidence. While we

believe that appellee's answer is, in effect, only an allegation that she was ignorant of the law, and the overwhelming weight of the evidence is contrary to the answer returned by the jury, yet we do not sustain this assignment of error.

■ The fourth assignment of error complains that the court erred in permitting appellee to testify concerning certain conversations she had with one unnamed party. We believe this assignment of error is well taken. Appellee was unable to give the name of the person who talked to her, and was permitted to testify that he told her that he was a "company man," but that he did not tell her what kind of company, and that he mentioned insurance to her. In view of appellee's testimony that her husband took out insurance for her, when he became a soldier, during the World War, the introduction of this uncertain evidence made the error the more grievous, in our opinion.

All of this testimony tended to bolster up appellee's issue of good cause for neglecting to timely present her claim before the Industrial Accident Board and, in view of the allegations that this conversation was with a representative of appellant insurance carrier, and that on the promises and representations made by such person appellee was lulled into safety and security and relied upon them instead of presenting her inquiry and claim further, the fact that she could not identify this agent or person as being connected in any wise with the insurance carrier renders the testimony subject to the objections made by the appellant. The assignment of error is sustained.

■ The fifth, sixth, and seventh assignments of error complain of the remarks of the court during the examination of the defendant's witnesses, Evalina Lewis and Flora Whittington. And, in view of the fact that upon another trial these matters may not arise again, we do not directly pass upon these assignments of error, but do say that the witness Evalina Lewis should be permitted to testify, as she offered to do in the trial court, that Amy Johnson lived in Oakdale, La., with Ben Alexander like man and wife, and that she quit Mark and took Alexander and lived with him in the same house as man and wife. This testimony bears directly on the issue of abandonment of the deceased by appellee and on the "good cause" which is provided for in the Compensation Act. The evidence tended strongly to establish the fact that appellee abandoned her said husband, without cause, and took up with one Alexander, whom she married, after she lost track of her husband. If this fact is established and found, appellee would be entitled to no compensation.

The eighth assignment of error complains of the remarks of the court to appellant's counsel in the presence of the jury, and, as this situation may never arise on another trial, we do not pass on this assignment of error.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded.