**DWYER v. SOUTHERN PAC. CO. et al.**

**No. 3899.**

Court of Civil Appeals of Texas. El Paso.
April 25, 1940.

Rehearing Denied June 20, 1940.

R. L. Holliday and Harold L. Sims, both of El Paso, and Henry T. Moore, of Los Angeles, Cal., for appellant.

J. M. Goggin and Kemp, Nagle & Smith, all of El Paso (C. W. Durbrow, of San Francisco, Cal., of counsel), for appellee.

WALTHALL, Justice.

Pat Dwyer, a minor, eleven years of age, by Sam Dwyer, his father and as next friend, as plaintiff, brought this suit against the Southern Pacific Company, a railroad corporation, and Richard E. O'Connor, as defendants, to recover damages alleged to have been sustained by Pat Dwyer, the minor.

It is alleged that on February 27, 1937, while the minor, Pat Dwyer, was crossing the Southern Pacific Company's railroad yards within the City of El Paso, Texas, and at a point in the City where the general public had been crossing and using the tracks and yards of the Railroad Company for a period of many years, with the knowledge, permission and acquiescence of the Southern Pacific Company, its officers, agents and employees, and at their implied invitation, one of the defendant Company's freight trains was caused to run over him, and particularly his left leg, causing injuries thereto which made it imperative that his left leg be amputated.

It was alleged that defendant Richard E. O'Connor was the Southern Pacific Company's head brakeman on the said freight train with full power and authority, express and implied from long-established usage and custom, to eject trespassers therefrom to prevent them from boarding the train, and to protect persons on the tracks or in close proximity thereto.

It was alleged that the yard was uneven in many particulars stated where the minor Pat Dwyer was at the time he was injured; that he was proceeding in a wester-

ly direction along the side of the train in the direction the freight train was moving, and going directly toward a switch stand in the yard, which the boy intended to go around.

It was alleged in substance that O'Connor discovered the boy and endeavored to prevent him from pursuing the course he was taking and to remove him from the Company's yards and in close proximity to its train and tracks, shouted at the boy from the top of the train in a loud angry tone, "Hey, you little bastard, get the hell out of here"; that the boy thereby became frightened and looked toward the top of the train where O'Connor was standing, and was caused to stumble over a switch stand and to fall upon the ground and under the train, and sustained the injury complained of.

The case was tried with a jury and submitted upon special issues.

Twelve questions were submitted to the jury; question No. 1 being as follows: "Do you find from a preponderance of the evidence that the defendant Richard E. O'Connor, on the occasion in question herein discovered plaintiff Pat Dwyer proceeding westerly along defendant Southern Pacific Company's track in proximity thereto, over which defendant's train was then proceeding westerly, and said defendant Richard E. O'Connor shouted at plaintiff in a loud and angry tone, 'Hey, you little bastard,' and further in substance, get the hell out of here? Answer yes or no." The question the jury answered, "No."

The jury found that appellant was not seeking to ride one of appellee's cars, as charged by appellees.

The jury made no finding on issue No. 12, which issue submitted the amount of appellant's damages, and upon that issue the jury apparently was in hopeless deadlock, at least some of the jury so thought and reported.

The jury, however, reported their partial finding, and, as to that, said they were all in agreement.

On appellee's motion the court rendered judgment on the verdict as returned by the jury.

The court overruled appellant's motion for a new trial, and the case is properly before us for review.

In his motion for a new trial, and as ground therefor, appellant alleged misconduct of the jury in arriving at their ver-dict. The court heard the statements of members of the jury on the question of misconduct. Without quoting what each of the jurors severally said on the hearing of the motion, it was shown that the jury took a number of votes on issue No. 1, stated above, the jury voting approximately about eight to four, "No."

It appears from their statements on the hearing of the motion that some of the jurors wanted to exonerate defendant O'Connor from liability and still hold the defendant Railroad Company liable. There was much discussion on that issue before issue No. 1 was decided. While that question was yet pending before the jury, a statement was made by some of the jurymen substantially to the effect that it was immaterial how the jury answered the issue as to O'Connor, and immaterial how the jury answered issue No. 1; that the ultimate recovery of the boy (appellant) would depend on how the jury answered question No. 12, referring to the amount of the damages the boy should recover against the Railroad Company; that the amount of the damages found in favor of the boy would control all other issues submitted.

We have not stated the exact language used in the argument, as the jurymen, in their evidence on the hearing of the motion, did not use the same words. The statement above made and the argument on the statement was in substance as above. All of the jurors who testified on the hearing of the motion were in agreement that the argument as stated above did occur in the juryroom, and at the time stated in their deliberation on their verdict.

After the above statement was made in the juryroom, and the jury had considered and argued on the matter and concluded that the amount of damages they found would control the judgment, several of the jury then changed their vote on issue No. 1 from yes to no, and so reported that finding.

Apparently the jury was in favor of appellant having a verdict for some amount, but were never able to agree on the amount, and on that issue made no finding.

The question presented here, and the only one we think to consider, is, Do the above facts show misconduct of the jury? If they do, the court should have declared a mistrial, and should have sustained appellant's motion.

In the case of Bradshaw v. Abrams, Tex.Com.App., 24 S.W.2d 372, 374, the court, speaking through Judge Critz, said: "It is certainly the settled law of this state that if, upon a consideration of the whole of the pertinent record bearing on the issue of misconduct, it is reasonably doubtful to the Supreme Court whether the misconduct affected the verdict in a material way, the verdict will be set aside and a new trial granted."

In the opinion it is further said that, regardless of the question of agreement, "the extended discussion by the jury of the legal effect of their answers * * * expressed during the deliberations of the jury * * * to so frame their answers as to give the plaintiff a judgment, is such misconduct as should result in a reversal."

It seems to us that the unquestioned discussion by the jury of the legal effect of a finding of damages for the plaintiff would control all other issues submitted to them, would be amenable to the above statement of the law.

In Walker v. Quanah, A. & P. Ry. Co., Tex.Com.App., 58 S.W.2d 4, 5, where the jury had agreed upon their answers to certain special issues, including the one upon which the jury awarded damages to plaintiff, and while the jury were considering their answer to the issue which had the effect of finding that the plaintiff did not use ordinary care on the occasion in question, and therefore was guilty of negligence, the question was raised by some of the jurors as to whether or not a negative answer to said issue would defeat a recovery for plaintiff of the damages already found by the jury. After some discussion among the jurors of the question, one of the jurors stated, in effect, that a negative answer to the special issue would not prevent the plaintiff from recovering the damages, and thereupon all the jurors agreed to answer the special issue "No," as they did. On the motion for rehearing on the issue of misconduct of the jury, the trial court heard the evidence and concluded against the issue of misconduct (Tex.Civ.App., 41 S.W.2d 534, 536). The Commission of Appeals, after fully stating the evidence, said: "To say the least, there arises a reasonable doubt as to whether or not such misconduct affected the verdict in a material way. Indeed, it could be safely said, from the facts stated, without taking into consideration the testimony of jurors regarding their mental operations, that it appears with a reasonable degree of certainty that the misconduct did affect the jury's verdict in material respects," and referred to the case of Bradshaw v. Abrams, supra. The court reversed and remanded the case.

We do not agree with the theory of the appellees that under the evidence a verdict for defendants should have been peremptorily instructed, and the judgment for that reason affirmed.

We think the case should be reversed and remanded, and it is so ordered.

PRICE, C. J., not sitting.