**PRYOR et al. v. NEW ST. ANTHONY HOTEL CO.**

No. 10946.

Court of Civil Appeals of Texas. San Antonio.

Dec. 11, 1940.

Rehearing Denied Jan. 15, 1941.

Denman, Franklin & Denman and Carter & Lewis, all of San Antonio, for appellants.

Johnson & Rogers, of San Antonio, for appellee.

MURRAY, Justice.

This suit was instituted by Mrs. Myra S. Pryor against New St. Anthony Hotel Company to recover damages resulting from personal injuries which she sustained in a fall while entering the Hotel Company's coffee shop as an invitee and customer.

This is the second appeal of this case. Our opinion on the first appeal is to be found in 132 S.W.2d 620.

The second trial, from which this is an appeal, was to a jury which found: (Issue 1) that Mrs. Pryor slipped down in the defendant's coffee shop; (Issue 2) that there was no water at the place where the plaintiff slipped; (Issue 6) that the waxing and polishing of the floor had not produced a slippery condition at the place where the plaintiff slipped; (Issue 9) that the rubber mat or a part thereof slipped on the floor when Mrs. Pryor stepped on the mat; (Issue 10) that the defendant was not negligent in having said unfastened mat on the floor at said locality; (Issue 12) that plaintiff's fall was the result of an unavoidable accident; (Issues 14–17) that the plaintiff did not assume the risk and that she was not guilty of contributory negligence and that the fall was not caused solely by her physical condition; (Issue 18) that because of the injuries sustained by reason of her fall Mrs. Pryor was damaged to the extent of $17,-500.

The trial court entered judgment for defendant and Mrs. Pryor has prosecuted this appeal.

■ Appellant contends that the jury was guilty of misconduct requiring a reversal of the judgment, because during their deliberations while the jury were divided as to what answers should be made to Issues Nos. 2 and 6, some of the jurors stated, in substance, that it was immaterial how they answered these issues because Mrs. Pryor would recover her damages regardless of how these issues were answered, and that thereby some of the jurors were induced to answer these issues "no" when they really felt from the evidence that the issues should be answered "yes."

Five jurors were called to testify upon this question.

Henry Waller, a juror, testified, in effect, that after the jury answered issue No. 1 "yes" and while they were considering issue No. 2, some of the jury having indicated they thought the issue should be answered that there was water at the place where Mrs. Pryor fell and others having indicated that the issue should be answered "no," one of the jurors, Mr. Boatner, asked the question whether or not they were going to allow Mrs. Pryor any damages, and that the jury agreed to allow her some damages. It was then suggested by some of the jurors that it was immaterial how they answered the issues, that she would get her damages just the same. Waller admitted that this discussion influenced him to answer issues Nos. 2 and 6 "no" when he really believed from the evidence that they should have been answered "yes."

On cross-examination Waller testified, in effect, that each time it was mentioned that the answers were immaterial as Mrs. Pryor was going to get damages in any event, some of the jurors would speak up and say that they were not concerned with the effect of their answers and that it was improper for them to consider such matters. He further testified, in effect, that he answered each issue separately and right down the line to the best of his ability in keeping with the charge and the evidence.

J. A. Thompson, another juror in the case, called as a witness, testified, in effect, as follows: That while the jury was deliberating and after they had answered some of the questions and were going back over their answers the question arose as to whether Mrs. Pryor could recover if they answered issue No. 2 "no," and that it was argued by some of the jurors that only if they desired to give Mrs. Pryor the full $50,000 she was suing for was it necessary to answer question No. 2 "yes," but that she could recover a part of what she was suing for even if this issue was answered "no." He agreed to answer this issue "no" after much discussion along the line above set out, although he believed there was water where Mrs. Pryor slipped and fell. He also agreed to answer issue No. 6 "no" after this discussion, when he believed from the evidence that the waxing and polishing of the floor produced a slippery condition at the place where Mrs. Pryor fell down.

On cross-examination he testified that he heard the court, and the lawyers in their argument, tell the jury that they should answer each question separately and one at a time right down the line, and that each question should be answered according to what the jury believed the

evidence to be and that he made his answers to the best of his ability, under the evidence, just like the court told him to do. That when they would get to arguing about a question "that we couldn't give the woman anything unless we answered the questions differently, some one · would speak up and say we were not concerned with that; that the court ·had instructed us that we were not concerned with the effect of our answers and that we should answer the questions under the evidence and that it wasn't any of the jury's business to decide what the effect of the answers were."

J. F. Scholz, another one of the jurors called as a witness, testified in substance as follows: That when they went out to deliberate upon a verdict they took up each question separately, had their arguments and finally agreed on what the evidence showed. After the jury had answered the questions some one said something about the effect of their answers and that the foreman and another juror told them that it was none of their business what effect the answers would have and that they could not talk about that. The discussion about the effect of the answers came up after the jury had already answered the questions. He also testified, some one mentioned the fact that Mrs. Pryor was a wealthy woman and that the jury on a prior trial did not give her any damages, but that such remark had no effect upon him.

J. W. Riggs, another juror, testified as follows: That while the jury were deliberating upon their verdict some juror said that Mrs. Pryor was already a wealthy woman and it seemed like she wouldn't be entitled to anything, or that she wouldn't want anything. That it was also stated that the cause had been tried before and that the jury did not give her anything on the first trial. He denied that these statements affected his verdict, but admitted that he had given appellant's attorney a · written statement to the effect that he presumed these things led him to agree to the answers that are written to the questions.

He further testified that he had heard some one say that they should answer the questions so that Mrs. Pryor would get something and this happened while they were answering the first twelve questions. He stated this did not affect him. He further admitted that he had given appellant's attorney a written statement to the effect

that he had agreed to certain answers because it was stated that Mrs. Pryor would get the money no matter how they answered the questions. On cross-examination he stated that the jury went out and took up each question and considered it separately and independently and answered it in the way the court told them to do. They answered each question as they found the evidence to be and that they considered each question without regard to any effect it might have on any other question. That they decided to give her some damages when they got down to question No. 18, and before they decided to give her any damages they had already decided the first seventeen questions.

When they were deciding the eighteenth question some one said that the way they had answered the questions she wouldn't get anything, and that the foreman and another gentleman spoke up and said, "The court has told us that is none of our business; that we must answer these questions separately and individually and we don't have anything to do with the effect of the answers," and that then the discussion ceased.

· On redirect examination he stated that when question No. 2 first came up he answered there was water on the floor where Mrs. Pryor fell. On recross-examination ·he stated that the other jurors convinced him that the evidence showed that there was no water on the floor and for that reason he changed his answer. That there was only one witness who testified there was water there and this witness testified both ways.

G. R. Boatner, a juror, testified as follows: While the jury were deliberating on their answer to question No. 2 some thought it should be answered "yes" and some "no." He asked the question, if they answered it "no" could they still give Mrs. Pryor some damages? and the foreman and others informed him that they could, and then he changed his answer from "yes" to "no." That the discussion. influenced him to make the change.

He testified on cross-examination that he remembered the court and the lawyers telling the jury to take each of the questions and answer each question separately and independently as they found the facts to be, and that they tried to answer these questions as they found the facts to be without regard to any effect their answers

might have. But then proceeded to state that the answers were made under the circumstances related on direct examination.

No other jurors testified and we are left in the dark as to what their testimony would have been.

After a careful consideration of this evidence, we conclude that the evidence is conclusive that misconduct actually occurred. No juror specifically denies that the remarks were made to the effect that it was immaterial how issues Nos. 2 and 6 were answered. The cross-examination, in effect, concedes that the remarks were made and the inquiry is whether or not each time such remarks were made the foreman, or some other juror, called attention to the fact that such remarks were improper and should not be considered by the jury.

■ It is a settled rule of law ·in this State that to induce a juror to change his answer to a material issue, by the representation on the part of other jurors that it is immaterial how such issue is answered, insofar as plaintiff's recovery is concerned, constitutes misconduct on the part of the jury. Figula v. Ry. Co., Tex.Civ.App., 131 S.W.2d 998; Dwyer v. Southern Pacific Co., Tex.Civ.App., 141 S.W.2d 961; Harkins v. Mosley, Tex.Civ.App., 134 S.W.2d 706; Walker v. Quanah Ry. Co., Tex.Com. App., 58 S.W.2d 4; Warnack v. Conner, Tex.Civ.App., 74 S.W.2d 719; Allcorn v. Fort Worth Ry. Co., Tex.Civ.App., 122 S.W.2d 341; Mann v. Cook, Tex.Civ.App., 11 S.W.2d 572; Abrams v. Bradshaw, Tex. Civ.App., 2 S.W.2d 917, affirmed, by Supreme Court, 24 S.W.2d 372; Harvey v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 261 S.W. 197, affirmed by Supreme Court, 276 S.W. 895; Coons v. Culp, Tex.Civ. App., 278 S.W. 914.

The overt act constituting jury misconduct having been clearly established, it is our duty to reverse the judgment and remand the cause for a new trial, unless we can say, upon a consideration of all the relevant testimony, beyond a reasonable doubt, that no injury resulted to appellant. Moore v. Ivey, Tex.Com.App., 277 S.W. 106, 107; Estep v. Bratton, Tex. Civ.App., 24 S.W.2d 465, 469; International-G. N. R. R. Co. v. Cooper, Tex. Com.App., 1· S.W.2d 578, 579; St. Louis S. W. Ry. Co. v. Smithhart, Tex.Civ.App., 9 S.W.2d 146, 151; Kennard v. Kennard, Tex.Civ.App., 26 S.W.2d 336, 337; Simmonds v. St. Louis, B. & M. Ry. Co., Tex. Com.App., 29 S.W.2d 989.

■ Two of the five jurors who testified stated on direct examination that they were influenced by the misconduct. On cross-examination it was shown that they did their best to answer the issues under the instructions of the court and from the evidence, and it was also shown that when the improper statements were made the foreman and other jurors would admonish the jury that they should not consider such matters. However, under all the testimony we are unable to say that, beyond a reasonable doubt, no injury resulted to appellant by reason of the improper remarks, and, unless we can so say, the judgment must be reversed. Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307. In Hines v. Parry, 238 S.W. 886, 888, the Commission of Appeals said:

"It is true that the members of the jury who are questioned strenuously deny that their minds were affected by the statements made to them. But this is only natural. Men are slow to admit such influence in their deliberations. They may not have realized that they were being influenced.

"Feeling that the communication made was such as leaves it doubtful as to whether or not the verdict of the jury, in part at least, was not influenced against the defendant, we recommend that the judgments of the trial court and Court of Civil Appeals [227 S.W. 339] be reversed, and remanded for a new trial."

To the same effect is Glazier v. Roberts, Tex.Civ.App., 108 S.W.2d 829; Republic Insurance Co. v. Hale,· 128 Tex. 616, 99 S.W.2d 909; Texas & P. Ry. Co. v. Van Zandt, Tex.Com.App., 44 S.W.2d 950; City of Amarillo v. Rust, Tex.Civ.App., 64 S.W. 2d 821.

We are at least left in doubt as to what effect this misconduct may have had upon the actions of the seven jurors who were not called to the witness stand by either party. Taylor v. Alexander, Tex.Civ.App., 34 S.W.2d 903.

The judgment will be reversed and the cause remanded.